1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

WILLIAM JAMES MATHEW
WALLACE II,

                    Plaintiff,

            v.

FRANK LONGANO et al,

                    Defendants.

CASE NO. 3:19-cv-05330-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: June 12, 2020

10
11
12
13
14
15

16   The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

17   States Magistrate Judge J. Richard Creatura. Before the Court are plaintiff's and defendants'

18   motions for summary judgment. Dkt. 74, 85.

19   Plaintiff, a former prisoner in custody of the Washington Department of Corrections

20   ("DOC"), alleges that defendants failed to provide surgery for his ankle injury in violation of the

21   Eighth Amendment and that defendants violated his rights under the Americans with Disabilities

22   Act ("ADA") by failing to provide medical and programming accommodations. Dkt. 19.

23   Defendants set forth substantial evidence demonstrating that plaintiff was treated on multiple

24   occasions by defendants and two orthopedists and provided with pain medication, a wheelchair,

1    a walking boot, crutches, and diagnostic testing (x-rays and CT scan). Both orthopedists

2    determined that surgery was necessary, but not urgent. Before plaintiff's surgery could be

3    scheduled and performed, plaintiff was transferred from DOC custody to face criminal charges in

4    other jurisdictions. Plaintiff has also failed to demonstrate an ADA violation as the undisputed

5    evidence shows that he has not been denied a necessary accommodation. Accordingly, plaintiff

6    has failed to sufficiently rebut defendants' summary judgment showing that they did not act with

7    deliberate indifference and did not violate plaintiff's rights under the ADA. Therefore, the Court

8    recommends that plaintiff's motion for summary judgment be denied and defendants' motion for

9    summary judgment be granted.

10                                              **BACKGROUND**

11        Plaintiff names the following as defendants: Mark Wentworth, DOC physician; Frank

12    Longano, DOC physician; Norman  Goodenough, "[health services manager] (HSM)" at

13    Washington Corrections Center ("WCC") Sandra Thompson, Nurse at Airway Heights

14    Corrections Center ("AHCC"); Debra Connor, HSM; Jeffrey Watson, grievance coordinator at

15    WCC; James Key, AHCC superintendent; Don McIntyre, HSM; Michael Kleemke, ADA

16    coordinator at AHCC; Jessica Fitzpatrick, counselor; and Jason Martin, grievance coordinator.

17    Dkt. 19.

18        On January 23, 2019, defendants filed their motion for summary judgment. Dkt. 74. On

19    January 27, 2020, plaintiff filed his motion for summary judgment. Dkt. 85. The Court granted

20    plaintiff an extension to file a response to defendants' motion for summary judgment on March

21    9, 2020. The parties filed responses and replies to the motions. Dkt. 88, 89, 100.

22        The parties previously stipulated to the dismissal of plaintiff's legal access and property

23    claims without prejudice. Dkt. 53, 56, 59, 62. To the extent that plaintiff attempts to revive these

24

claims in his motion for summary judgment and response, Dkt. 85 at 11; 100 at 5, any such

claims will not be considered as they have previously been dismissed.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or

is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in

the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th

Cir. 2013) (citing *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)); *Tarin v.

County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

As the party moving for summary judgment, defendants have the initial burden to

demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir.

2010). The movant "always bears the initial responsibility of informing the district court of the

basis for its motion," and identifying those portions of the record, including pleadings, discovery

materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a

genuine issue of material fact exists does not preclude summary judgment. *California*

1    *Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th

2    Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and

3    whose existence might affect the outcome of the suit," and the materiality of which is

4    "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific*

5    *Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

6          Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

7    grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

8    'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477

9    U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

10   longer can it be argued that any disagreement about a material issue of fact precludes the use of

11   summary judgment."). In other words, the purpose of summary judgment "is not to replace

12   conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

13   *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

14   support an assertion of fact or fails to properly address another party's assertion of fact as

15   required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

16   materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

17   Fed R. Civ. P. 56(e)(3).

18         When parties file cross-motions for summary judgment, as the parties have done here, each

19   motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v.*

20   *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must review the evidence submitted

21   in support of each cross-motion. *Id*. And, although the parties may each assert there are no

22   uncontested issues of material fact, the Court must determine whether disputed issues of material

23   fact are present. *Id*.; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148 (D. Idaho 2010).

24

REPORT AND RECOMMENDATION - 4

1

**DISCUSSION**

2

Defendants contend that they provided plaintiff with adequate medical care, plaintiff

3

cannot demonstrate defendants violated the ADA, plaintiff cannot show personal participation of

4

several defendants, and defendants are entitled to qualified immunity. Dkt. 74. Defendants assert;

5

therefore, they are entitled to summary judgment dismissing plaintiff's complaint with prejudice.

6

*Id*. Plaintiff seeks summary judgment on liability. Dkt. 85.

7

The following facts are undisputed by the parties or, following the Court's review, have

8

been deemed undisputed for purposes of the pending motions. The following is derived from the

9

allegations in plaintiff's complaint, defendants' answer, and all declarations and other records

10

submitted on the record and referred to by the parties in their filings for the Court's consideration

11

on the parties' summary judgment motions. *See* Dkt. 19, 74-82, 85, 89, 100.

12

In support of their motion, defendants submitted the following evidence: (1) declarations

13

of Jeffrey Watson, Vickie Hall, James Key, Sandra Thompson, Jessica Fitzpatrick, Jason Martin,

14

Norman Goodenough, and Michael Klemke; (2) plaintiff's medical records, (3) plaintiff's

15

grievances/kites; (4) communications and documents related to plaintiff's accommodations and

16

prison education and work programs; and (5) DOC policies.

17

Plaintiff did not submit any evidence in support of his motion but signed his complaint,

18

motion for summary judgment, and response under the penalty of perjury, and all three

19

documents are being considered as evidence. Dkt. 19, 85, 100. *See Jones v. Blanas*, 393 F.3d

20

918, 923 (9th Cir. 2004) (Because plaintiff is *pro se*, the Court "must consider as evidence in his

21

opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings,

22

where such contentions are based on personal knowledge and set forth facts that would be

23

24

1  admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents

2  of the motions or pleadings are true and correct.")

3  **A. Medical Treatment**

4  　　　1. Evidence

5  　　　In March 2017, plaintiff fractured his left ankle while he was in the community. Dkt. 76,

6  Declaration of Vickie Hall in Support of Defendants' Motion for Summary Judgment (Hall

7  Declaration), Attachment A at 43, 113-15. An orthopedist recommended surgery and scheduled

8  plaintiff for a follow up appointment the following week. *Id.* Aside from plaintiff's statement that

9  he asked defendants to obtain his prior health records, Dkt. 100 at 6, there is no evidence in the

10  record indicating that plaintiff attended the follow up appointment or whether he sought any further

11  treatment for his ankle injury before entering DOC custody.

12  　　　Almost a year later, on February 15, 2018, plaintiff entered DOC custody and was housed

13  at WCC. Dkt. 75; Declaration of Jeffrey Watson in Support of Defendants' Motion for Summary

14  Judgment (Watson Declaration); Dkt. 76, Hall Declaration, Attachment A at 43, 77-79; Dkt. 100

15  at 6. The same day, an intake screening was completed at WCC, noting that plaintiff's ankle was

16  swollen. *Id.* at 77-79.

17  　　　One day after his arrival, plaintiff was examined by defendant Wentworth. Plaintiff

18  indicated that his leg was in pain and it was difficult to walk and requested a lower bunk. Dkt.

19  76, Hall Declaration, Attachment A at 43, 61; Dkt. 100 at 6-7. Plaintiff stated that he had broken

20  his left ankle in the past and did it again. *Id.* Defendant Wentworth noted that plaintiff would

21  need to have x-rays completed to determine any injury and that he would address the request for

22  a lower bunk after the x-rays were completed. *Id.* Defendant Wentworth informed plaintiff that

23  he would have his full intake physical exam shortly after the appointment. Dkt. 76, Hall

24

Declaration, Attachment A at 43, 61. Plaintiff states that defendant Wentworth told him that there was no radiologist available, and plaintiff would be called back in the coming week. Dkt. 100 at 7.

On February 26, 2018, plaintiff filed a grievance, asking for a lower bunk, stating he was in pain and inquiring about the status of his x-ray. Dkt. 75, Watson Declaration, Attachment A at 2. Plaintiff was advised that he had not yet had contact with medical staff, only mental health, and was advised to sign up for sick call for medical and discuss with his provider. *Id.*

On March 2, 2018, defendant Longano performed plaintiff's intake physical examination and ordered an x-ray of plaintiff's ankle. Dkt. 76, Hall Declaration, Attachment A at 43, 66-67, 69-73; Dkt. 100 at 7. The same day, an x-ray was performed indicating an un-united medical malleolar fracture. Dkt. 76, Hall Declaration, Attachment A at 43, 65-67. Plaintiff was assigned to a lower bunk bed. Dkt. 100 at 8. Plaintiff filed another grievance on March 6, 2018, stating that he was still in pain. Dkt. 75, Attachment A at 5, 6. Defendant Watson advised plaintiff to work with his medical providers. *Id.*

On March 11, 2018, plaintiff was seen by medical staff for complaints of left ankle pain. Dkt. 76, Hall Declaration, Attachment A at 60. Plaintiff was prescribed Ibuprofen and Tylenol and provided a Health Status Report ("HSR") for crutches. Dkt. 76, Hall Declaration, Attachment A at 60. Plaintiff was advised to seek additional medication from the prison commissary, and he stated that he would do so. *Id.* Plaintiff was also informed that defendant Longano was waiting for "ortho info from hospital." *Id.*

In a medical opinion from Dr. Sawyer dated March 12, 2018, Dr. Sawyer diagnosed plaintiff with a fracture non-union of the medial malleolus indicating early degenerative changes of the ankle. *Id.* at 43, 59 (The opinion is dated March 12, 2018, it is not clear if this is the date

1  that defendant Longano sent the request, or the date that Dr. Sawyer responded.). Dr. Sawyer

2  indicated that the injury would not heal without surgical intervention which should improve, if

3  not relieve, plaintiff's current symptoms and give him a better long-term result. Dkt. 76, Hall

4  Declaration, Attachment A at 59. Dr. Sawyer also indicated that the end result would not be as

5  good as if he had undergone early open reduction internal fixation surgery ("ORIF"), but surgery

6  should improve, if not relieve plaintiff's current symptoms. *Id.*

7      On March 14, 2018, plaintiff was seen by medical staff with complaints of hand, arm, and

8  axillary pain related to the crutches. Dkt. 76, Hall Declaration, Attachment A at 43, 57. Defendant

9  Longano approved the issuance of a wheelchair. *Id.* On March 21, 2018, plaintiff was seen by

10  defendant Longano for a follow up appointment. Based on the recommendations from Dr.

11  Sawyer, defendant Longano issued a walking boot for support and Ibuprofen for pain until

12  plaintiff could obtain surgery. Dkt. 76, Hall Declaration, Attachment A at 43, 57. Plaintiff was

13  then transferred to AHCC. Dkt. 77, Declaration of James Key in Support of Defendants' Motion

14  for Summary Judgment (Key Declaration), ¶4.

15      On April 5, 2018, plaintiff completed an intake screening form at AHCC. Dkt. 76, Hall

16  Declaration, Attachment A at 79. Plaintiff noted a leg injury and requested a low bunk. *Id.* On

17  April 20, 2018, plaintiff submitted an emergency medical grievance for pain medication. *Id.* at

18  56. Defendant Thompson noted that plaintiff already had a prescription for Ibuprofen and was

19  educated to obtain further pain medication from the prison commissary. Dkt. 76, Hall

20  Declaration, Attachment A at 43, 56. Defendant Thompson provided another supply of Ibuprofen

21  and submitted an outside orthopedic consult request. Dkt. 78, Declaration of Sandra Thompson

22  in Support of Defendants' Motion for Summary Judgment ("Thompson Declaration"), ¶6; Dkt.

23  76, Hall Declaration, Attachment A at 43, 56.

24

On April 24, 2018, made an appointment with medical staff regarding his inability to sit in a wheelchair all day. Dkt. 76, Hall Declaration, Attachment A at 43, 54. Plaintiff was late for his appointment and was asked to leave. *Id.* The same day, plaintiff was seen not wearing his walking boot. Dkt. 76, Hall Declaration, Attachment A at 43, 54. Defendant Thompson discussed the need to not become deconditioned prior to any orthopedic intervention and provided plaintiff with a walker for support and to encourage ambulation to maintain strength and mobility. Plaintiff was provided with ice and another supply of Ibuprofen and reminded to purchase additional medication from the prison commissary. Dkt. 78, Thompson Declaration ¶7; Dkt. 76, Hall Declaration, Attachment A at 43, 54.

On June 7, 2018, plaintiff was seen for complaints of left shoulder and neck pain without known specific injury. Dkt. 76, Hall Declaration, Attachment A at 43, 52. Plaintiff was treated with Toradol and a Medrol dose pack. *Id.* Plaintiff requested a HSR which would allow him not to attend class or not sit upright for more than four hours at a time, but no HSR was issued and plaintiff was informed that HSRs are not issued during sick call visits for chronic issues. Dkt. 78, Thompson Declaration, ¶8; Dkt. 76, Hall Declaration, Attachment A at 43, 52.

On June 21, 2018, plaintiff was taken to an outside orthopedic examination with Dr. Shirzad at the Northwest Orthopedic Specialists in Spokane, Washington. Dkt. 76, Hall Declaration, Attachment A at 44, 90-91. Dr. Shirzad confirmed the diagnosis of non-union of medial malleolus fracture of left ankle with an initial injury in 2017. *Id.* Exam findings revealed 5/5 motor strength in the muscles of the lower leg and ankle. *Id.* Vascular examination was normal. *Id.* Sensation was intact to ankle and foot. *Id.* X-rays were reviewed and noted to have overall alignment to be maintained. *Id.* Plaintiff had some deformity around the medial malleolus, and there appeared to be some callus formation around the fracture site. *Id.* Dr.

1    Shirzad recommended continued use of the wheelchair, but if plaintiff could tolerate going short

2    distances, it was okay for him to walk. Dkt. 76, Hall Declaration, Attachment A at 44, 92, 94. Dr.

3    Shirzad also recommended a CT scan. Dkt. 76, Hall Declaration, Attachment A at 44, 92; Dkt.

4    78, Thompson Declaration, ¶9.

5            In July 2018, plaintiff requested a cushion for the wheelchair. Dkt. 76, Hall Declaration,

6    Attachment A at 50. Defendant Thompson denied the request because cushions are only needed

7    for those who are at risk of skin breakdown because of inability to move sufficiently to relieve

8    pressure on th skin, and a skin assessment revealed no at-risk areas. Dkt. 78, Thompson

9    Declaration, ¶10; Dkt. 76, Hall Declaration, Attachment A at 50. Plaintiff was encouraged to

10   walk as much as he could tolerate, to maintain strength and mobility in preparation for any

11   orthopedic intervention. *Id.*

12           On July 18, 2018, the CT scan was performed. Dkt. 76, Hall Declaration, Attachment A

13   at 43, 86; Dkt. 78, Thompson Declaration, ¶11. The CT scan showed incompletely united

14   chronic fracture deformity of the base of the medial malleolus with only a small osseous bridge

15   at the posterior fracture and mild ankle osteoarthritis and no acute finding. Dkt. 76, Hall

16   Declaration, Attachment A at 44, 86; Dkt. 78, Thompson Declaration, ¶11. On July 24, 2018,

17   plaintiff again saw Dr. Shirzad who confirmed that to repair the non-union, plaintiff would need

18   surgery with a bone graft. Dkt. 76, Hall Declaration, Attachment A at 44, 87, 89. The AHCC

19   consultation report states "will coordinate care [and] surgery appointment. *Id.* at 89. Specific

20   dates and times are omitted from the report for security reasons. *Id.* Defendant Thompson also

21   noted on the report that plaintiff was going to Oregon for court. *Id.*

22           On July 30, 2018, plaintiff was transported to the Spokane County Jail for extradition to

23   Oregon. Dkt. 76, Hall Declaration, Attachment A at 44, 89. Based on the information from the

24

1    orthopedists (Dr. Sawyer and Dr. Shirzad), defendant Thompson determined that there was

2    nothing to suggest that delaying plaintiff's surgery would complicate his outcome or be

3    dangerous. Dkt. 78, Thompson Declaration, ¶12; Dkt. 76, Hall Declaration, Attachment A at 44,

4    50. Defendant Thompson spoke with an individual at the Spokane County Jail and advised that

5    plaintiff did have a condition that would eventually need surgery but as long as he limited his

6    mobility, he was safe for transport. Dkt. 76, Hall Declaration, Attachment A at 44, 50. Defendant

7    Thompson noted that plaintiff would return to AHCC if other facilities had major concerns. Dkt.

8    78, Thompson Declaration, ¶12; Dkt. 76, Hall Declaration, Attachment A at 44, 50.

9        On December 17, 2018, while plaintiff was out of DOC custody, Dr. Julie Radosititz

10    noted that she had spoken with an orthopedist's office and the orthopedist wanted plaintiff out of

11    the wheelchair and walking which is why he had a brace and physical therapy. Dkt. 76, Hall

12    Declaration, Attachment A at 44, 129. Plaintiff also refused physical therapy. Dkt. 76, Hall

13    Declaration, Attachment A at 44, 129. In the progress notes, it was reported that plaintiff did not

14    want to go to physical therapy anymore, it was not doing him any good and it was just "more

15    excuses for you to take my [wheelchair] away." *Id.*

16        On February 23, 2019, plaintiff returned to AHCC and into DOC custody. Dkt. 78,

17    Thompson Declaration, ¶13. The day before his arrival, plaintiff was approved for a loaner

18    wheelchair until his personal wheelchair could be cleared and logged into property. Dkt. 76, Hall

19    Declaration, Attachment A at 44.  On March 26, 2019, defendant Thompson met with plaintiff

20    for re-evaluation of his known left medial malleolar fracture non-union to determine whether

21    plaintiff could be transported safely for extradition to California. As part of the evaluation,

22    defendant Thompson reviewed his medical history and conducted a physical examination. Dkt.

23    78, Thompson Declaration, ¶ 4; Dkt. 76, Hall Declaration, Attachment A at 43-44. At that time,

24

1    plaintiff was scheduled for another outside consultation with orthopedist Dr. Shirzad. *Id.*

2    Defendant Thompson made the determination to await any further plans until she received Dr.

3    Shirzad's recommendations. *Id.* Plaintiff had access to a wheelchair for long distances and a

4    walking boot to ambulate. Dkt. 78, Thompson Declaration, ¶14; Dkt. 76, Hall Declaration,

5    Attachment A at 44. On April 11, 2019, defendant Thompson called Dr. Shirzad's office and

6    inquired whether plaintiff's ankle needed urgent surgery, no surgery, or if surgery would wait as

7    long as a year without significant increase in risk to plaintiff. Dkt. 78, Thompson Declaration,

8    ¶15. Defendant Thompson declares that she requested this information because other

9    jurisdictions, outside of DOC custody, were seeking to have plaintiff appear. *Id.*

10        On April 22, 2019, Dr. Tonhofer spoke with Dr. Shirzad regarding plaintiff's ankle injury.

11    Dkt. 78, Thompson Declaration, ¶16; Hall Declaration, Attachment A at 40, 42, 83. Dr. Shirzad

12    indicated that while the issue has been ongoing for approximately two years, plaintiff did not

13    need surgical repair immediately. *Id.* However, plaintiff should eventually have the surgery

14    because he would be at risk for early arthritis at the injury site. *Id.* Plaintiff was transported to

15    California for his criminal charges on April 25, 2019. Dkt. 77, Key Declaration, ¶5. Plaintiff

16    remains in California and is not required to return to AHCC upon his release from California as

17    he has completed his prison term. *See id.*

18        2.   <u>Analysis</u>

19        Plaintiff alleges defendants that violated Plaintiff's Eighth Amendment rights when they

20    denied him proper medical treatment for his ankle injury. Dkt. 19.

21        Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary

22    and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

23    omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim

24

1  has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the

2  defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1991),

3  *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en

4  banc).

5      A medical need is serious "if the failure to treat the prisoner's condition could result in

6  further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

7  F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

8  doctor or patient would find important and worthy of comment or treatment; the presence of a

9  medical condition that significantly affects an individual's daily activities; or the existence of

10 chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for

11 medical treatment." *Id.* at 1059-1060.

12     If a plaintiff shows he suffered from a serious medical need, he must then show the

13 prison officials responded to the need with deliberate indifference. *See Farmer*, 511 U.S. at 834.

14 Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure

15 to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant

16 must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A

17 prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious

18 medical needs "unless the official knows of and disregards an excessive risk to inmate health or

19 safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the

20 inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

21 inference." *Id.*

22     Deliberate indifference "may appear when prison officials deny, delay or intentionally

23 interfere with medical treatment, or [ ] may be shown by the way in which prison physicians

24

provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). If the prison's medical staff is not competent to examine, diagnose, and treat inmates' medical problems, they must "refer prisoners to others who can." *Hoptowit*, 682 F.2d at 1253; *see also Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111-12 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson*, 838 F.2d at 394. The Court also recognizes mere differences of opinion between a prisoner and prison medical staff or between medical professionals regarding the proper course of treatment does not give rise to a § 1983 claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

i.    Defendant Wentworth

Plaintiff contends that defendant Wentworth refused to order an x-ray during his sick call exam, and promised to call plaintiff back, but never did. Dkt. 19 at 3.

The evidence reflects that defendant Wentworth examined plaintiff on February 16, 2018 and plaintiff requested a lower bunk. Dkt. 76, Hall Declaration, Attachment A at 43, 61. In the treatment notes, defendant Wentworth states that he would address the bunk issue after the x-ray was completed. *Id.* at 43, 61. The x-ray was completed approximately two weeks later on March 2, 2018. *Id.* at 43, 65, 67.

1    Here, plaintiff argues that defendant Wentworth was deliberately indifferent because it

2    took two weeks for the x-ray to be completed. However, failure to order x-rays or diagnose and

3    treat plaintiff's ankle injury amounts to nothing more than a difference of opinion in diagnosis

4    and treatment. *See Estelle,* 429 U.S. at 106-107 (1976) ("[A] complaint that a physician has been

5    negligent in diagnosis or treating a medical condition does not state a valid claim of medical

6    mistreatment under the Eighth Amendment. Medical malpractice does not become a

7    constitutional violation merely because the victim is a prisoner."). Rather, it is "classic example

8    of a matter for medical judgment[.]" *Id.*

9    Moreover, plaintiff states that defendant Wentworth told him that there was no

10   radiologist available at the time of plaintiff's visit in February 2018, Dkt. 100 at 7. There is no

11   indication that defendant Wentworth had any control over scheduling of radiology visits or x-

12   rays, and plaintiff has not shown otherwise. Accordingly, any such delays cannot be attributed to

13   any wrongdoing by defendant Wentworth.

14   To the extent that plaintiff complains that defendant Wentworth failed to provide any

15   durable medical equipment or pain medication, there is no evidence in the record that plaintiff

16   requested any ambulatory devices or pain medication during his examination with defendant

17   Wentworth. Dkt. 100 at 6; Dkt. 76, Hall Declaration, Attachment A at 61. Rather, the treatment

18   notes reflect that the only request plaintiff made was for a lower bunk, which defendant

19   Wentworth said he would address after the x-ray was completed. *Id.* Plaintiff's mere

20   disagreement with defendant Wentworth's treatment decision does not establish deliberate

21   indifference. *See Toguchi*, 391 F.3d at 1058. Plaintiff has not shown that defendant Wentworth

22   was aware of a substantial risk of serious harm to plaintiff's health existed, yet purposely failed

23   to properly respond to plaintiff's complaints. Therefore, plaintiff fails to provide evidence that

24

1   defendant Wentworth's course of treatment was "medically unacceptable" and that defendant

2   Wentworth chose this course of treatment in conscious disregard of an excessive risk to

3   plaintiff's health. *See Toguchi,* 391 F.3d at 1058; *see also McGuckin v. Smith,* 974 F.2d 1050,

4   1059 (9th Cir. 1992) ("Mere negligence in diagnosing or treating a medical condition, without

5   more, does not violate a prisoner's Eighth Amendment rights").

6         ii.     Defendant Longano

7         Plaintiff alleges that defendant Longano, while performing a physical exam discovered

8   that plaintiff's leg was broken but never did anything. Dkt. 19 at 3. Plaintiff alleges that it took

9   two weeks to get crutches, a cast, and wheelchair, because plaintiff continued to file grievances.

10  *Id.*

11        The evidence reflects that defendant Longano performed plaintiff's intake exam and

12  ordered an x-ray on March 2, 2018. Dkt. 76, Hall Declaration, Attachment at 59. Plaintiff's x-ray

13  was completed the same day. *Id.* Defendant Longano then consulted with Dr. Sawyer, a DOC

14  orthopedist, seeking recommendations for management of plaintiff's ankle injury. *Id.* Plaintiff

15  has not presented any evidence, nor is there any in the record, that there was any medical

16  necessity for expediting a referral to Dr. Sawyer or another outside specialist or that defendant

17  Longano's course of treatment was medically unacceptable. *See Toguchi v. Chung*, 391 F.3d

18  1051, 1058 (9th Cir. 2004). Rather, "[d]elays and waiting to see medical specialists are not

19  uncommon in the world outside prisons." *Trillo v. Grannis,* 2008 WL 2018339, at *3 (E.D. Cal.

20  May 8, 2008).

21        Even assuming that plaintiff believed that he needed crutches, a cast, and walking boot,

22  on March 2, 2018, the failure to provide crutches until March 12, 2018 cannot be characterized

23  as deliberate indifference. There is no evidence in the record that plaintiff requested any

24

1    ambulatory devices during his intake physical examination from defendant Longano or anyone

2    else. It appears that the first time he requested crutches was on March 11, 2018, and he was

3    approved for them on the same day after seeing medical providers. Dkt. 76, Hall Declaration,

4    Attachment A at 60. Moreover, after complaining of pain after using the crutches, defendant

5    Longano approved plaintiff for use of a wheelchair on March 14, 2018. Dkt. 76, Hall

6    Declaration, Attachment A at 43, 57.

7        Plaintiff's mere disagreement with defendant Longano's treatment decisions do not

8    establish deliberate indifference. *See Estelle*, 429 U.S. at 107. Plaintiff has not shown that

9    defendant Longano was aware of a substantial risk of serious harm to plaintiff's health existed,

10    yet purposely failed to properly respond to plaintiff's complaints.

11        iii.    Defendants Thompson and Connor

12        Plaintiff alleges that defendant Thompson ignored directives, and her directives were in

13    opposition of every other health care provider. Dkt. 19 at 3. Plaintiff alleges that defendant

14    Connor disregarded defendant Thompson's failures, dispensed medication without examining

15    plaintiff. *Id.* at 6.

16        The undisputed evidence reflects that plaintiff was approved for surgery but was then

17    transferred, out of defendants' control – first to Oregon, then to California. Dkt. 78, Thompson

18    Declaration. Based on the information from both Dr. Shizrad and Dr. Sawyer, defendant

19    Thompson determined that there was nothing to suggest that delaying plaintiff's surgery would

20    complicate his outcome or be dangerous. Dkt. 78, Thompson Declaration, ¶12. When plaintiff

21    returned to DOC custody several months later, defendant Thompson re-evaluated plaintiff and

22    again confirmed that the surgery was non-urgent before plaintiff was transferred to California.

23    *Id.* at ¶¶14-16. There is no indication that defendant Thompson or Connor did not intend to

24

1  provide plaintiff with the surgery, if he had not been transferred outside of the DOC custody to

2  face criminal charges in other jurisdictions.

3        Plaintiff has not offered any evidence in opposition to demonstrate that defendant

4  Thompson's or defendant Connor's actions were the product of improper motive or intentional

5  disregard for plaintiff's condition. *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404,

6  407 (9th Cir. 1985) ("mere delay of surgery, without more, is insufficient to state a claim of

7  deliberate medical indifference"). Deliberate indifference is not an "inadvertent failure to provide

8  adequate medical care." *Helling v. McKinney,* 509 U.S. 25, 32 (1993); *Estelle,* 429 U.S. at 103–

9  04.

10        The only opposition plaintiff offers is his contention that surgery was medically required

11  and urgent. Dkt. 85, 100. However, plaintiff's own statements do not create a genuine issue of

12  material fact because, as discussed above, a difference of opinion between a prisoner-patient and

13  prison medical authorities regarding treatment does not establish an Eighth Amendment

14  violation. The Ninth Circuit has repeatedly found that "[a] difference of opinion between a

15  prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983

16  claim." *See also Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of [medical]

17  opinion does not amount to a deliberate indifference to [plaintiff's] serious medical needs.");

18  *Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir. 1986) ("state prison authorities have wide

19  discretion regarding the nature and extent of medical treatment"). *See e.g., Daniels v. Evans,*

20  2010 WL 1221798 (N.D. Cal. 2010) (plaintiff's allegations of pain while waiting six months for

21  knee surgery more akin to difference of medical opinion). Plaintiff produces no evidence that

22  surgery was ever deemed urgent by a doctor or other medical professional, and the evidence

23

24

1    before the Court demonstrates that plaintiff was repeatedly examined by medical professionals

2    who, on each occasion, determined any surgery to be non-urgent.

3        And although plaintiff contends that the pain medication provided was insufficient and

4    not adequate to manage his pain, Dkt. 100 at 11, he has not presented any evidence that he was

5    denied pain medication. Rather, he argues that he was prescribed medication that he did not

6    agree with. However, the Ninth Circuit has squarely held that prisoners are not entitled to their

7    choice of pain medication. *Wilson v. Borg,* 1995 WL 571481, at *2 (9th Cir. Sep. 27, 1995) ("a

8    mere difference of opinion" regarding whether plaintiff's pain medication was "insufficient" "to

9    alleviate ... hernial pain" "does not constitute an [E]ighth [A]mendment violation."); *Smith v.*

10   *Norrish,* 1995 WL 267126, at * 1–2 (9th Cir. May 5, 1995) (Plaintiff's disagreement regarding

11   "the type of pain medication he received ... is insufficient to give rise to a constitutional claim.");

12   *McMican v. Lewis,* 1995 WL 247177, at *2 (9th Cir. Apr. 27, 1995) ("Although [plaintiff]

13   disagreed with the type of pain medication he received, such disagreement is insufficient to give

14   rise to a constitutional claim.").

15       iv.    Defendants Goodenough, McIntyre, Martin, Watson, Key

16       Plaintiff alleges that defendant McIntyre ignored plaintiff's grievances and failed to

17   provide proper care. Dkt. 19 at 5. Plaintiff alleges that defendant Martin rejected valid

18   grievances, asked plaintiff to withdraw grievances, and refused to accept some emergency

19   grievances. *Id.* at 6-7. Plaintiff alleges that defendant Watson failed to ensure proper medical

20   treatment and reasonable accommodations after receiving plaintiff's grievances. Dkt. 19 at 3.

21   Plaintiff alleges that defendant Key refused to address the complaints of inadequate medical

22   treatment. Dkt. 19 at 7. Plaintiff alleges that defendant Goodenough did not investigate his

23   claims. Dkt. 19 at 3.

24

1      According to a declaration filed by defendant Key, he does not have the education or

2   training to make decisions related to medically necessary treatment of inmates housed at the

3   prison. Therefore, he relies on the medical staff to make decisions regarding inmate medical care

4   under the Offender Health Plan. Dkt. 77, Key Declaration, ¶3. The job duties of defendant

5   Goodenough and McIntyre include clerical and administrative support of the medical unit, but

6   they do not have the education or training to make decision on medically necessary treatment

7   and are not medical providers. *See* Dkt. 81, Goodenough Declaration, ¶2. The duties of

8   defendant Watson and Martin include receiving, tracking, processing, investigating as necessary,

9   and responding to prisoner grievances/complaints. Dkt. 75, Watson Declaration, ¶ 3; Dkt. 80,

10  Martin Declaration, ¶3. Defendants Watson and Martin declare that they were not aware of any

11  information which made them believe that plaintiff was not receiving medically necessary care.

12  *Id.*

13     Plaintiff does not identify any instance in which he alleges that he asked defendants

14  Goodenough, Key, Martin, McIntyre or Watson for medical care, and was refused. Rather,

15  plaintiff alleges that he complained to these defendants of the actions of other defendants. Dkt.

16  19 at 3-6. This is entirely different from requesting medical care from defendants Goodenough,

17  Key, Martin, McIntyre, and Watson at the time of an incident and being refused.

18     Plaintiff's allegations against defendants Goodenough, McIntyre, Martin, Watson, Key

19  are insufficient to state a claim. *See Rodriguez v. Secretary Penn. Dept. of Corrections,* 441 Fed.

20  Appx. 919, 923 (3rd Cir. Aug. 12, 2011) (medical administrators who themselves did not provide

21  medical care could not be considered deliberately indifferent, "simply because they failed to

22  respond directly to the medical complaints of a prisoner who was already being treated by

23  [prison medical staff]") (quoting *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3rd Cir. 1993)); *Hamby*

24

REPORT AND RECOMMENDATION - 20

*v. Hammond*, 2015 WL 1263253, at *25 (W.D. Wash. Mar. 19, 2015), *aff'd*, 821 F.3d 1085 (9th Cir. 2016); *Williams v. Phillips*, 2011 WL 5325487, *2 (E.D. Cal. 2011) ("improper reject[ion of]] grievances does not state a claim"); *Seeley v. Schwartz*, 2006 WL 547934, *4 (E.D. Cal. 2006) (same); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (an inmate has no constitutional entitlement to a specific grievance procedure). Accordingly, there is insufficient personal participation to hold defendants Goodenough, McIntyre, Watson, and Martin liable under § 1983.

     v.    Conclusion

     In sum, defendants have submitted declarations and the relevant portions of plaintiff's medical records. According to this evidence, which plaintiff does not refute, plaintiff was injured his ankle a year before he entered into DOC custody. During the course of treatment, plaintiff received pain medication, a walker, a wheelchair, a walking boot, a referral for a lower bunk, referral to and consultation with an outside orthopedist, x-rays, a CT scan, and numerous medical reviews of his condition. Plaintiff was frequently treated and monitored by defendants, and other DOC medical providers. While plaintiff may have preferred to have surgery sooner, there is no showing that defendants were deliberately indifferent to plaintiff 's medical needs.

     Accordingly, the Court recommends granting defendants' motion for summary judgment and denying plaintiff's motion for summary judgment as to plaintiff's Eighth Amendment claim. Based on the foregoing, the Court need not address defendants' alternative ground of qualified immunity.

**B. ADA Violations**

1    Plaintiff alleges that defendant Fitzpatrick refused to ensure that plaintiff received

2    reasonable accommodations. Dkt. 19 at 5-6. Plaintiff alleges that defendant Klemke refused to

3    respond to several violations of the ADA process. Dkt. 19 at 4.

4        1.   Evidence

5            i.   Plaintiff's Programming at AHCC

6    Prior to plaintiff's arrival at AHCC, an initial classification plan was completed and

7    recommended that plaintiff complete substance abuse programming. Dkt. 79, Declaration of

8    Jessica Fitzpatrick in Support of Defendants' Motion for Summary Judgment (Fitzpatrick

9    Declaration), ¶2 and 4, Attachment A. In April 2018, defendant Fitzpatrick received a kite from

10   plaintiff requesting that he be dropped from the class, stating that he was provided inaccurate

11   information and was too far behind to catch up. *Id.* at ¶5. Plaintiff did not state any concerns

12   about his ability to complete the class due to medical issues. *Id.*; Attachment B.

13   Defendant Fitzpatrick e-mailed plaintiff's instructors requesting feedback related to

14   plaintiff's enrollment and participation in the class, and the instructor indicated that plaintiff was

15   informed at enrollment he was joining the class late and agreed to the conditions. *Id.* at ¶6;

16   Attachment C. The instructor noted plaintiff was doing well and could complete most of the

17   work outside of the classroom. Fitzpatrick. *Id.*

18   Defendant Fitzpatrick received a kiosk message from plaintiff again indicating he wanted

19   to be removed from the class. *Id.* at ¶7, Attachment D. Plaintiff stated that he was behind in the

20   work, starting another course and had personal and medical concerns. *Id.* Defendant Fitzpatrick

21   reached out to the instructor again informing him that plaintiff would be starting a therapeutic

22   community course, which was a court ordered program and would create a heavy workload. *Id.*

23   at ¶8, Attachment C. She specifically asked whether plaintiff could balance both programs. *Id.*

24

1    The instructor indicated that plaintiff was not focused and was a severe procrastinator but that

2    the class would provide strategies to address these risks. The instructor also praised plaintiff as a

3    good student when he applied himself and suggested that plaintiff stay in both classes as one

4    would end in about a month. *Id.*

5         Defendant Fitzpatrick declares that she never threatened plaintiff that he would be infracted

6    for asking for help. *Id.* at ¶9. She did inform him that his request to drop out of the class was not

7    supported by the Facility Risk Management Team or his Program Supervisor. *Id.* Therefore, his

8    request to drop out of the class would not be considered again and could result in an infraction for

9    refusing to program if he failed to attend. *Id.,* Attachment E. At the time plaintiff was assigned to

10   defendant Fitzpatrick's caseload, there were no HSRs that indicated there were medical or mental

11   health reasons that plaintiff was unable to participate in an education class. *Id.* at ¶10, Attachment

12   F. Defendant Fitzpatrick emailed prison medical staff and explained in detail the requirements for

13   his attendance, and medical staff indicated there was nothing that medically prevented plaintiff

14   from attending and participating in the class. *Id.*

15                    ii.   Plaintiff's ADA Accommodations

16        On March 30, 2019, defendant Klemke received a kiosk message from plaintiff indicating

17   that he was not being housed in an ADA compliant cell and that there needed to be a process to

18   ensure his durable medical equipment was properly working. Dkt. 82, Declaration of Defendant

19   Michael Klemke in support of Defendants' Motion for Summary Judgment at ¶6, Attachment B.

20   Defendant Klemke informed plaintiff that ADA cells were reserved for prisoners that were

21   wheelchair bound. *Id.* Plaintiff was not considered to be wheelchair bound since his use of the

22   wheelchair was intermittent as it was only approved for long distances. *Id.* Defendant Klemke

23

24

1    also informed plaintiff that he needed to contact medical staff if he was having issues with the

2    medical equipment that he was being issued. *Id.*

3         Defendant Klemke declares that plaintiff never requested use of a handicap shower. *Id.* at

4    7; Attachment B. Defendant Klemke states that the only time plaintiff indicated that he needed

5    access to a handicap shower access was through his kiosk message in which plaintiff claimed that

6    the handicap shower did not work for two months. *Id.*

7              2.   Analysis

8         Plaintiff alleges that defendants violated his rights under the ADA when they failed to

9    provide plaintiff with reasonable accommodations due to his ankle injury including access to

10   handicap shower and cell and educational programming.  Dkt. 19.  Defendants argue that

11   plaintiff's ADA claims against individual defendants are improper and plaintiff can only proceed

12   on an ADA claim against the DOC, which is not a defendant. Dkt. 74 at 17. Defendants also

13   contend that if plaintiff could proceed on this claim, it fails because he has not been denied a

14   needed accommodation. Dkt. 74 at 17-19.

15        Title II of the ADA provides that "[n]o qualified individual with a disability shall, by

16   reason of such disability, be excluded from participation or be denied the benefits of the services,

17   programs, or activities of a public entity, or be subjected to discrimination by any such entity."

18   42 U.S.C. § 12132. A potential defendant under the statute is any "public entity" which includes,

19   among others, "any State or local government"; and "any department, agency, special purpose

20   district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131.

21   Individuals may only be sued under the ADA in their official, rather than their individual

22   capacities. *Vinson v. Thomas,* 288 F.3d 1145, 1156 (9th Cir. 2002) (denying plaintiff's ability to

23   sue state officials in their individual capacities based on Title II of the ADA); *Miranda B. v.*

24

1    *Kitzhaber,* 328 F.3d 1181, 1187–88 (9th Cir. 2003) (Title II's statutory language does not

2    prohibit injunctive action against state officials in their official capacities).

3        As an initial matter, plaintiff's complaint is silent as to the capacities in which defendants

4    are sued. Dkt. 19. Plaintiff does not refute defendants' argument that he has not named the DOC as

5    a defendant and cannot proceed in a claim against any individual defendants. *See* Dkt. 84, 100. In

6    the complaint, plaintiff seeks both injunctive and monetary relief, but he does not seek any

7    injunctive relief with respect to this ADA claims. *See* Dkt. 19 at 8. To the extent that plaintiff seeks

8    to sue defendants in their individual capacity under the ADA, plaintiff's claims cannot be

9    sustained, and defendants are entitled to summary judgment in their individual capacity. *See*

10   *Vinson,* 288 F.3d at 1156.

11       To the extent that plaintiff seeks to recover monetary damages under the ADA against

12   individuals in their official capacity, he must prove intentional discrimination on the part of the

13   defendant. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1141 (9th Cir. 2001). In *Duvall,* the Ninth

14   Circuit held that intentional discrimination can be shown by establishing "deliberate

15   indifference" by the defendant. *Id.* The *Duvall* court further explained that "[d]eliberate

16   indifference requires both knowledge that a harm to a federally protected right is substantially

17   likely, and a failure to act upon the likelihood." *Id.*

18       At least a part of plaintiff's claims turn on the failure to provide proper medical treatment

19   and ambulation aids. However, the ADA does not provide causes of action for challenges to a

20   prisoner's medical care. *Simmons v. Navajo County,* 609 F.3d 1011, 1022 (9th Cir. 2010) ("The

21   ADA prohibits discrimination because of disability, not inadequate treatment for disability.");

22   *see also Burger v. Bloomberg,* 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) ("a lawsuit under

23   the ... [ADA] cannot be based on medical treatment decisions"); *Bryant v. Madigan,* 84 F.3d 246,

24

1    249 (7th Cir. 1996) (The ADA is not "violated by a prison's simply failing to attend to the

2    medical needs of its disabled prisoners."). Thus, to the extent that plaintiff bases his ADA claims

3    on the purported inadequate provision of medical care, the claims should be dismissed under

4    *Simmons.*

5           With respect to plaintiff's ADA claims that he has denied accommodations to participate

6    in daily living activities based a disability, the evidence shows that plaintiff was not provided

7    with a handicap cell or shower because he is not disabled and does not require any

8    accommodations. The undisputed evidence reflects that plaintiff is able to walk and his

9    wheelchair use was intermittent and only approved for long distances. Dkt. 82, Declaration of

10    Defendant Michael Klemke in support of Defendants' Motion for Summary Judgment at ¶6,

11    Attachment B; Dkt. 76, Hall Declaration, Attachment A; Dkt. 78, Thompson Declaration.

12    Handicap showers and cells are reserved for individuals who are wheelchair bound. Dkt. 82,

13    Declaration of Defendant Michael Klemke in support of Defendants' Motion for Summary

14    Judgment at ¶¶6-7. Further, the only time plaintiff indicated that he needed access to a handicap

15    shower access was through his kiosk message in which plaintiff claimed that the handicap

16    shower did not work for two months. *Id.* Thus, plaintiff had the burden and he failed to make the

17    required showing that he is disabled and that defendants acted with deliberate indifference in

18    regard to his requests for a handicap shower or cell.

19           Next, the evidence reflects that there were no physical or medical reasons indicating that

20    plaintiff could not participate in an education class. Dkt. 79, Fitzpatrick Declaration. In fact, the

21    nature of plaintiff's claim appears to be that he would prefer not to attend his programming,

22    attempted to use his ankle injury as a reason to unenroll from the program without repercussion.

23    He does not claim that *because of* his ankle injury, he was denied access to the education class.

24

1    Thus, the undisputed evidence reflects that plaintiff has not been denied any benefits or services

2    *because of* his disability.

3         Accordingly, defendants' motion should be granted as to plaintiff's ADA claims and

4    plaintiff's motion should be denied.

5                                          **CONCLUSION**

6         Based on the foregoing, the undersigned recommends defendants' motion for summary

7    judgment be granted and all claims be dismissed. The undersigned recommends that plaintiff's

8    motion for summary judgment be denied.

9         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

10   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

11   6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

12   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

13   of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

14   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

15   imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 12, 2020**

16   as noted in the caption.

17        Dated this 21st day of May, 2020.

18

19

20

21        J. Richard Creatura
          United States Magistrate Judge

22

23

24